### BROOKS v. NORRIS et al. No. 4713.

Court of Appeal of Louisiana. Second Circuit.

March 29, 1934.

---

*Rehearing denied May 4, 1934.

Hudson, Potts & Bernstein, of Monroe, for appellants.

Fink & Fink, of Monroe, for appellee.

DREW, Judge.

Plaintiff, alleging he was a guest in defendant's automobile, instituted this suit for damages for personal injuries received in a collision between the car owned and driven by defendant and a car owned and operated by Guy Corley. He made defendants Ivy Norris and his insurer. The acts of negligence alleged against Norris are: (1) Excessive speed, (2) failure to keep a proper lookout, (3) failure to slacken speed or stop, and (4) defective brakes.

Defendants answered denying any negligence on the part of Ivy Norris, and, in the alternative, pleaded the contributory negligence of plaintiff. The insurance company coupled with its answer an exception of no cause of action.

The lower court rendered judgment for plaintiff against Ivy Norris in the sum of $1,250, and a judgment of nonsuit as to the claim against the insurance company. Both defendants have appealed, and plaintiff has answered the appeal praying that the judgment be increased to $5,000, the amount sued for, and for judgment against the insurance company. Therefore, the entire case is before us for review.

The only allegation in the petition in regard to the insurance company is in article 1, which reads as follows: "That Ivy Norris, a resident of the Parish of Ouachita, of full age of majority, and/or his insurers, the St. Paul Fire & Marine Insurance Company, an insurance company organized and existing by and under the laws of the State of Minnesota, and authorized and doing business in the State of Louisiana, are justly and legally indebted unto your petitioner, jointly and in solido, in the full sum of five thousand ($5,-000.00) dollars, with legal rate of interest thereon from date of demand, until paid, and for all costs of this suit, for this, to-wit: * * * "

 It is so apparent that this allegation alone is not sufficient to state a cause of action against the insurance company, that we refrain from discussing it. The exception should have been sustained. But it is of no moment here due to our determination of the case on its merits.

 Before leaving Monroe, Ivy Norris invited his fourteen year old brother and the plaintiff to ride with him in his automobile. When he had reached a point in the road about three miles west of West Monroe, traveling west, and just as he came to the top of an incline out of a depression in the road, he saw coming towards him two cars, one in which was Professor Kennedy—the car being operated by a negro chauffeur—and a Ford car driven by Guy Corley. The distance Norris was from the two cars at this time varies from 348 feet to 400 yards in the testimony of the witnesses. Norris was traveling approximately forty miles per hour and the other two cars slightly slower.

The Corley car attempted to pass the Kennedy car, and when it was cut back to the right, the right rear bumper of the Corley car hung in the left front bumper of the Kennedy car. The two cars traveled so entangled for possibly 50 feet, when the Kennedy car was pulled or knocked into the fence on the side of the road and the two cars became disentangled; at which time the Corley car headed angling across the road to the north or its left and struck the Norris car on the left front part and side. This impact wrecked the Norris car and injured both guests who were riding with him.

The pavement at the place of the collision is eighteen feet wide and on each side of the road there is a metal fence. This fence is at least three feet from the edge of the pavement on each side, giving a space between the fences of at last twenty-four feet. At the time the Corley car ran into the Norris car, the Norris car had its right wheels off the pavement and in close proximity to the fence on the right side of the road. The Kennedy car was scraping the fence on the left side of the road. There was, therefore, approximately twelve feet, or more, between the Kennedy car and the Norris car to be used by the ·Corley car had. it continued straight on its course; and had it continued in a straight line and not darted over to its left, there would have been no accident.

The distance the Norris car was from the other two cars when they could be first seen by Norris upon reaching the top of the incline varies much from the testimony of the witnesses. A few days after the accident, plaintiff, in a written statement made in the presence of his attorney, said he did not know exactly how far away the on-coming two cars were at that time. A few days after the accident, defendant Norris pointed out on the road where he was when he could first see the two on-coming cars, where he was when the Ford or Corley car attempted to pass the Kennedy car, and where his car was when the Corley car darted to the left across the road. He likewise pointed out the location of the on-coming cars at each of these times and actually assisted in making the measurements, which show that at the time he could and did see the two cars coming towards him they were 340 feet from him; when the Corley car attempted to pass the Kennedy car they were 220 feet from him; and when the Corley car started to angle across to its left side of the road it was 48 feet from him. While these distances may not be accurate, the court is justified in accepting them in preference to the wide differences of opinion given in the testimony on the trial of the case. These distances are to a great extent corroborated by the testimony of Professor Kennedy and his negro chauffeur.

We therefore have the combined speed of the Corley car and the Norris car, which was at least seventy-five miles per hour, covering 110 feet per second, or exactly two seconds from the time Corley attempted to pass the Kennedy car until the collision occurred, and less than one-half second from the time the Corley car started to its left until the time of the collision. And, if we should triple the distance as shown by the measurements, we would only have six seconds from the time Norris could see the on-coming cars until the accident, and a little more than one second after Corley's car headed to the left. There was very little time for Norris to do anything. There was an emergency created by no fault or negligence of his. It is true he did not reduce the speed of his car, but the testimony shows that if he had, or even had he stopped the car, if he could have, the collision could not have been avoided. Norris testified to this fact, although he was a very friendly witness for the plaintiff and is to some extent interested in the outcome of the case due to the fact that his young brother, ·through his father, is preparing to file suit, or has already filed suit, on behalf of the minor brother, with the hope of collecting from the insurance company. The sudden emergency and danger was so imminent that Norris' young brother jumped up from the seat and called out, "Take me." Norris took his right hand off the steering wheel and attempted to pull his brother back on the seat and to shield him with his arm.

The speed of the Norris car was not excessive at the time the emergency was discovered. He was keeping a proper lookout, as is shown by the fact that he saw the on-coming cars as soon as possible. The failure to slacken the speed of his car was not negligence under the circumstances due to the short time he had within which to act, and .for the further reason a slowing down of the car or even stopping it could not have prevented the accident.

██ The last charge of negligence is that the brakes on Norris' car were defective. It is shown that the brakes on his car were not perfect—he had them worked on a few days before the accident—but there was no attempt made to stop the car until the Corley car.cut to the left, and then it was too late to stop regardless of the kind of brakes, and it is shown that the brakes if defective had nothing to do with the accident. We therefore find there was no negligence on this score.

We therefore find there was no negligence on the part of defendant Norris that was a proximate cause of the accident.

It therefore follows that the judgment of the lower court is incorrect and is reversed, and the demands of plaintiff are rejected, at his cost in both courts.